**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-24324-Civ-WILLIAMS/TORRES

AUBREY DALE JONES,

      Plaintiff,

v.

ANDREW SAUL, Acting Commissioner of
the Social Security Administration,

      Defendant.
_____/

**REPORT AND RECOMMENDATION ON THE PARTIES'**
**CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross motions for summary judgment filed by Aubrey D. Jones ("Plaintiff") [D.E. 21] and Andrew Saul, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") [D.E. 22] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching his unfavorable decision.[1]  For the reasons stated below, Plaintiff's amended motion for summary judgment [D.E. 21] should be **GRANTED**, Defendant's motion for summary judgment [D.E. 22] should be **DENIED**, and the decision of the ALJ should be **REVERSED** and **REMANDED**.

---

[1]  On October 18, 2019, the Honorable Kathleen M. Williams referred all dispositive matters in this case to the undersigned Magistrate Judge for a Report and Recommendation.   [D.E. 2].

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was born on March 15, 1967 and has a high school education. Plaintiff has worked as a chrome plater and airport security officer. In November 2014, paramedics were summoned for Plaintiff due to him experiencing dizziness, difficulty walking, shortness of breath, vomiting, and slurred speech. He was admitted to Jackson Health System and received treatment for an acute ischemic cerebrovascular accident, also referred to as a stroke. A few weeks later, Plaintiff was discharged to his home in stable condition but with ongoing services recommended such as physical therapy and occupational therapy. The next month, Plaintiff was again admitted to Jackson Health System for a possible transient ischemic attack. Plaintiff had numerous follow-up appointments with Dr. Eric Spivack, an internist specializing in cardiac medicine, whom provided treatment for Plaintiff prior to the stroke and through 2017.

On January 27, 2015, Plaintiff applied for disability insurance benefits and supplemental social security income, alleging a disability onset date of November 9, 2014, the day he suffered the stroke. The Commissioner denied Plaintiff's applications at the initial and reconsideration levels. Plaintiff then requested a hearing before the ALJ that took place on November 28, 2017. After considering the record and the testimony of a vocational expert ("VE"), the ALJ issued an unfavorable decision on September 21, 2018.

At step one of the five-step sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date

because his attempt to return as a Transportation Security Administration agent was an unsuccessful work attempt. The ALJ found at step two that Plaintiff had the severe impairments of status post cerebrovascular accident, dysphasia, congestive heart failure, mild aortic insufficiency, mild mitral regurgitation, mild tricuspid insufficiency, mild pulmonic insufficiency, mild pulmonary hypertension, obesity, hypertension, hyperlipidemia, and diabetes mellitus. The ALJ then determined that these impairments did not meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to moving to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work as defined in 20 C.F.R § 404.1567(b). The ALJ then proceeded to step four and determined that Plaintiff could not perform his past relevant work. The ALJ thus considered Plaintiff's RFC, age, education, and work experience in connection with the Medical-Vocational Guidelines in determining that other work existed for Plaintiff. This included the jobs cashier, sales attendant, or information clerk. The ALJ relied on the testimony of the VE in making this determination.

Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g). Accordingly, this action is now ripe for disposition.

## II.     STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether

the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case). Instead, so long as an ALJ's findings are supported by substantial evidence, a court must defer to the ALJ's decision even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g). However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). A court also reviews an ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

4

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence. *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, a court's responsibility is to ensure that the proper legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.   ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing evidence that proves her or she meets this statutory definition. "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)). The steps are followed in order to determine if the claimant is disabled.

An ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. *See* 20 C.F.R. §

404.1520(b). In the second step, an ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If an ALJ does not make such a finding, then the inquiry ends. *See id.* at § 404.1520(c). At step three, an ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work."). If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work. If the claimant cannot perform past relevant work, then a prima facie case of disability is established. An ALJ assesses a claimant's RFC at this stage, based on the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See id.* at § 416.945(a)(1). A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

When making this finding, an ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis. Only upon the conclusion of this function-by-function analysis may an ALJ express the claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy.

This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform based on the claimant's RFC, work experience, education, and age. *See id.* at § 404.1520(e)-(f).

On appeal, Plaintiff's primary argument is that the ALJ made reversible error by failing to mention an opinion of Dr. Spivack, Plaintiff's longtime treating internist. This argument is well taken. An ALJ evaluates several factors when determining how much weight to accord a medical opinion, including: (1) whether the physician has examined the claimant, (2) the length, nature, and extent of a treating physician's relationship with the claimant, (3) the medical evidence and explanation supporting the physician's opinion, (4) how consistent the physician's "opinion is with the record as a whole," and (5) the physician's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors apply to both examining and non-examining doctors. *See id.* Absent good cause, an ALJ must give a treating[2] physician's opinion substantial or considerable weight. *See id.* (noting that more weight is generally given to

---

[2] A treating source is defined as the claimant's "own physician . . . who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

opinions from treating sources); *see also Winschel*, 631 F.3d at 1179.

Good cause exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence. *See Hudson v. Heckler,* 755 F.2d 781, 786 (11th Cir. 1985) (citation omitted). Although "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the court "to conclude that the ALJ considered [the claimant's] medical condition as a whole." *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

In other words, "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [a doctor's] opinion, this error [is] harmless because it is still clear that the ALJ's rejection of the portions of [the doctor's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantive evidence." *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014); *see also Laurey v. Comm' r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) (holding that "[a]lthough the ALJ never stated the weight given to [a doctor's] treatment notes, the ALJ discussed the content of [the] notes, showing that the ALJ considered and gave weight to this medical evidence."). However, the complete omission of a

treating physician's opinion may constitute reversible error. *See Bailey v. Comm'r of Soc. Sec.*, 802 F. App'x 462, 465 (11th Cir. 2020) ("where the ALJ made no mention of Dr. Garewel's opinion that Bailey was unable to work and failed to specify the weight given to that opinion, we cannot 'determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'") (quoting *Winschel*, 631 F.3d at 1179).

Here, Dr. Spivack treated Plaintiff numerous times between 2013 and 2017. And he provided two medical opinions, one dated July 11, 2017 and one dated August 25, 2017. [D.E. 13, Pg. 824-833]. The July 2017 opinion states that Plaintiff could sit less than two hours and stand and/or walk one hour total in an eight hour workday; occasionally lift and carry up to 10 pounds; could never use his arms for pushing and pulling or fine manipulation; could never use his feet for pushing and pulling; needed complete freedom to rest frequently without restriction; and needed to lie down and rest throughout the workday and elevate his legs 50% of the workday. Dr. Spivack's follow-up opinion from August 2017 concluded that Plaintiff could not perform light or sedentary work.

The ALJ's decision discussed in detail Dr. Spivack's July 2017 opinion and concluded that it "is inconsistent with the overall medical evidence of record, including the contemporaneous physical examination findings (i.e., grossly intact neurological examination, no cyanosis or clubbing, symmetrical 2+ pulses, and no abnormal swelling, redness, tenderness, increased warmth, or deformities of the joints) . . . .". [D.E. 13, Pg. 17]. There is no mention of the August 2017 opinion nor

the weight the ALJ assigned to it.

The Commissioner concedes this omission. Instead, the Commissioner characterizes any error as harmless because the August 2017 opinion only concluded that Plaintiff would not be able to perform light or sedentary work, which are determinations of disability reserved to the Commissioner. This argument may have been persuasive, and we recognize that there is no rigid requirement that the ALJ reference every piece of evidence in her decision, but it ignores that an Eleventh Circuit panel recently reversed a similarly flawed decision. In *Bailey*, the claimant asserted that the ALJ committed reversible error by failing to mention a physician's handwritten note even though the ALJ considered two other opinions from the same physician. 802 F. App'x at 465. Specifically, the handwritten opinion was a "To Whom It May Concern" note that said "I am treating [Bailey] for progressive neuropathy which is resulting in weakness, pain, and sensory deficits. I don't presently think he can work." *Id.* (alteration in original). The court reasoned that the omission of this note was reversible error as follows:

> We also recognize that the final determination about whether a claimant is "unable to work" is one that is reserved to the Commissioner: a physician's opinion that a person is "unable to work" is thus not determinative and is entitled to no "special significance." See 20 C.F.R. § 404.1527(d). We stress, however, that the ALJ must consider all the claimed expert, medical opinions in the record and must specify the weight -- including no weight, if applicable -- given to each purported medical opinion and the reasons therefor. *See id.* at §§ 404.1520(e), 404.1527(c); *Winschel*, 631 F.3d at 1179; *see also Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) ("[T]he ALJ has a basic obligation to develop a full and fair record."). We have said that failure to articulate clearly the reasons for giving less weight to the opinion of a treating physician constitutes reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

10

*Id.* at 465-66.

We see no difference between the ALJ here failing to mention Dr. Spivack's August 2017 opinion from the omitted opinion in *Bailey*. As in *Bailey*, the ALJ's decision that Plaintiff could perform light work is contradicted by the absent opinion. The ALJ's failure to mention Dr. Spivack's August 2017 opinion is thus reversible error even if its conclusion was reserved to the Commissioner and the ALJ discussed Dr. Spivack's July 2017 opinion. *See Fortini v. Comm'r of Soc. Sec.*, 2020 WL 3868801, at *3-4 (M.D. Fla. July 9, 2020) (finding, pursuant to *Bailey*, that the ALJ's failure to cite a treating physician's opinion was "reversible error even if the opinion is duplicative of the information already incorporated into the RFC . . . Thus, the Court finds that the failure to mention, or specify the weight assigned to, the opinion is not harmless and requires reversal); *Carbonell v. Comm'r of Soc. Sec.*, 2020 WL 1027233, at *4 (M.D. Fla. Mar. 3, 2020) (same).

Because this issue is dispositive, we find that there is no need to address Plaintiff's remaining arguments. *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (deciding that there is no need to analyze other issues when case must be reversed due to other dispositive errors).

## IV. CONCLUSION

Substantial evidence does not support the ALJ's findings as noted in her unfavorable decision. The ALJ committed harmful error with respect to not considering Dr. Spivack's August 2017 opinion. For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E.

21] be **GRANTED**, that Defendant's motion for summary judgment [D.E. 22] be **DENIED**, and that the decision of the Commissioner be **REVERSED** and **REMANDED** to the Commissioner for further proceedings.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 18th day of December, 2020.

>  */s/ Edwin G. Torres*
>  EDWIN G. TORRES
>  United States Magistrate Judge